No. 86-397

IN THE SUPREME COURT OF THE STATE OF MONTANA
1987

---

IN RE THE MATTER OF THE ACTIVITIES OF THE
DEPARTMENT OF NATURAL RESOURCES AND CONSER-
VATION, THEIR BOARD OF DIRECTORS, LARRY
FASBENDER, DIRECTOR OF DNRC, AND GARY FRITZ,
ADMINISTRATOR, DEPARTMENT OF NATURAL RESOURCES
DIVISION, TO PLACE UNDER MAPA, THE EXAMINATION
PROCEDURES CONDUCTED PURSUANT TO SECTION
85-2-243, MCA.

---

APPEAL FROM:   The Upper Missouri River Basin Water Division of
               The State of Montana

COUNSEL OF RECORD:
       For Appellant:

               Donald D. MacIntyre argued, Dept. of Natural Resources,
               Helena, Montana
               G. Steven Brown argued, Helena, Montana

       For Respondent:

               Hon. W.W. Lessley argued, Chief Water Judge, Bozeman,
               Montana
               Hon. B.W. Thomas, Water Judge, Chinook, Montana
               Hon. Robert M. Holter, Water Judge, Libby, Montana
               Hon. Roy Rodeghiero, Water Judge, Roundup, Montana
               Edward Steinmetz argued, Water Master, Bozeman,
               Montana

       For Amicus Curiae:

               K. Paul Stahl argued, Montana Power Co., Helena,
               Montana
               R. Blair Strong, Washington Water Power Co., Spokane,
               Washington

---

               Submitted: February 10, 1987
                 Decided: March 31, 1987

Filed: MAR 31 1987

_____
Ethel M. Harrison
                 Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


We interpret and define in this case to the extent raised by the issues the respective statutory authorities granted by present law to the water courts, the chief water judge and the water court judges of Montana, on the one hand, and the Department of Natural Resources and Conservation (DNRC) and the Board of Natural Resources and Conservation (BNRC) on the other hand.

This cause is before us on appeal by the BNRC and the DNRC from two orders of the chief water judge restraining or prohibiting the BNRC and the DNRC from adopting administrative rules in the examination and determination of water rights. We do not have before us the record from a particular water right dispute as the underlying basis for the appeal. The orders were issued by the chief water judge upon his learning of the proposed or imminent adoption of administrative rules by the BNRC.

The essence of the dispute here is whether the Montana Administrative Procedures Act (MAPA) applies to activities undertaken by the Department of Natural Resources when acting under the direction of the water court pursuant to § 85-2-243, MCA.

On July 23, 1986, W. W. Lessley, chief water judge of the Montana Water Courts, with the concurrence and agreement of the remaining water judges, Honorable Bernard W. Thomas, Honorable Robert M. Holter, and Honorable Roy C. Rodeghiero issued an order directed to the parties named in the caption hereof, essentially the DNRC and the BNRC, that "all activities of the DNRC under § 85-2-243, MCA, shall not be placed as an agency under MAPA"; and that in the alternative,

DNRC could comply with the order by proceeding to the adoption of rules as may be agreed upon between the DNRC and the water courts, without placing such rules under MAPA.

The order of July 23, 1986 was accompanied by a memorandum from the chief water judge setting forth the facts and the legal basis for the court's decision to issue the order.

On August 8, 1986, the chief water judge, again with the concurrence and agreement of the remaining water judges, issued a further order directed to the same parties, reciting that apparently the DNRC was mailing out copies of proposed examination instructions relating to water right claims rules; that the DNRC should not take any further action to seek public review and comment on proposed examination instructions without the authorization of the Montana Water Court; and that any future failure to comply with the July 23, 1986 order or the August 8, 1986 order would be contempt of court.

It is from the aforesaid orders that the DNRC and the BNRC have appealed to this Court.

We have received amicus briefs in this cause from Washington Power Company, and Montana Power Company, each supporting the position of the DNRC and the BNRC.

## ISSUES

Although the two orders issued by the chief water judge relate to activities of the DNRC under § 85-2-243, MCA, the BNRC and the DNRC cast the issue more comprehensively. The appellants state the issue to be whether the BNRC or the DNRC must comply with the rule making provisions of the Montana Administrative Procedure Act prior to implementing their statutory responsibilities under Title 85, Chapter 2, Part 2, MCA.

Montana Water Courts pose the issues to be decided as follows:

1. Whether the DNRC has any independent statutory authority to examine water right claims under the present adjudication process.

2. Whether Montana Water Court's July 23, 1986 orders prohibiting the BNRC, and DNRC from adopting the claimed examination instructions as administrative rules under MAPA were proper.

SUMMARY OF THE ARGUMENTS OF DNRC-BNRC

The holding in Arizona v. San Carlos Apache Tribe (1983), 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837, ended the competitive vying between federal authorities representing the Indian tribes and the states representing state water interests to get their cases filed first, in the federal courthouses by the former and in the state courthouses by the latter. In San Carlos Apache Tribe, the United States Supreme Court would give deference to the more comprehensive state processes and thus avoid the potential for duplicative and wasteful litigation resulting in inconsistent dispositions should federal and state water rights proceedings both continue on parallel tracks. For this reason the legislative thrust to expedite and facilitate the adjudication of water rights of Montana no longer gets its impetus from the need to win the race to the courthouse, nor is there an immediate danger of imposed water allocation among the Missouri Basin states.

DNRC (for the rest of this opinion we will use "DNRC" for the combined arguments of DNRC and BNRC, unless otherwise specified) contends, in a nutshell, the legislature mandated an expeditious judication program not to encourage a hastily-achieved adjudication controlled exclusively by the judiciary but rather one that would be the least expensive,

least time consuming, and with the minimum involvement of attorneys. The adjudication must go forward in a manner compatible with the doctrine of separation of powers and with due process rights fully protected.

The orders issued by Chief Water Judge Lessley are improper in that there was no pending issue of adjudication before the judge at the time the orders were issued, nor was any hearing or opportunity for hearing granted to DNRC prior to the issuance of the orders.

The legal issues raised in this appeal are (1) separation of powers issue raised by § 85-2-243 (1985), MCA, and (2) the necessity of MAPA compliance by an executive agency in the statutory construction of 85-2-243, MCA.

Since DNRC is an executive agency with rule making power lodged in BNRC, the function of DNRC under 85-2-243, MCA, is to provide technical assistance and information to the water judges. Therefore each element of each claim must be analyzed by DNRC technical personnel, and report must be made to the water court considering the technical accuracy and consistency of each claim. MAPA guarantees to each citizen the fundamental constitutional right to participate in their government. The administrative code committee of the legislature has determined that DNRC and BNRC should operate under MAPA. MAPA fulfills the public's right to know.

The DNRC technical role is an executive agency action for the purposes of MAPA, and the water court may not set the parameters of an executive agency's investigation. The Water Court's ability to "direct" the DNRC is limited to general directions concerning the water court's judicial requirements and procedures. The water court cannot set the policies and procedures for examining claims, and also sit in judgment of the validity of those policies and procedures because it

would then cease to be an impartial decision-maker. The DNRC proposed water right claims rules are the result of stipulation between the parties in Montana Department of Fish, Wildlife, and Parks, et al. v. Water Court of the State of Montana, Nos. 85-345, 85-468, and 85-493, pending in this Court. Through the course of litigation, the water courts have changed the standards and procedures used by them in adjudicating water claims, and there is a necessity for public review under MAPA of DNRC examination procedures before they are applied to the elements of individual water rights claims. The imposition of executive or administrative duties on the court, if § 85-2-243, MCA, is interpreted that way, violates the principle of separation of powers.

A due process problem exists because various Indian tribes have raised the due process issue based on the involvement of the DRNC in the adjudication process.

SUMMARY OF ARGUMENTS OF THE WATER COURTS

The orders from the chief water judge of July 23 and August 3, 1986, were justified and necessary because the DNRC had made a decision to proceed under MAPA despite the clear opposition by the water courts. The orders followed several meetings between the DNRC director and its legal staff, on the one hand, and members of the water court staff on the other, as well as letters sent to the DNRC director expressing opposition and stating reasons. The orders did not issue until DNRC announced its decision to go ahead under MAPA.

DNRC cannot cite clear legislative authority given to it to adopt claims examination rules under MAPA because there is no such authority. For six years, since the adoption of the Water Courts Act, the DNRC has investigated claims without seeking to adopt MAPA rules. If MAPA rules were necessary,

all of the work done so far by the water courts would be open to objection, a disastrous development.

The history of the water adjudication acts shows that the legislature intended a limited function for the DNRC in the adjudication, rather than an expansive one. In 1979, the Water Adjudication Act was adopted after the legislature showed dissatisfaction in the progress that was being made under a former act when the DNRC was investigating all claims but had not reached a single conclusion.

The legislature opted to place the adjudication of water rights in a judicial system and for that purpose established a statutory water claims procedure and a system for water courts to adjudicate water claims.

Specifically, the legislature gave to the water courts the authority to obtain supplementary information through directions to the DNRC. There is no current statutory language which carries over the DNRC's independent investigation authority which it enjoyed prior to 1979.

The provisions of the statutes authorizing the water courts to obtain the information and assistance of the DNRC are constitutional. They do not offend the principle of separation of powers. It is well recognized that legislative or administrative authority which is merely incidental to the exercise of the judicial function does not offend separation of powers.

The due process violations claimed by the DNRC are unfounded. While the water courts direct the DNRC as to the necessity and scope of the examination process, the water courts in no way influence what the DNRC will find or how it analyzes the facts. Since no particular factual situation demonstrating a due process denial is being alleged here, the DNRC is clearly challenging § 85-2-243, MCA, on its face. The combination of judging and the direction for

investigation vested in a judicial tribunal when used as a function of the judicial process has been upheld in the courts.

## HISTORY OF THE WATER ADJUDICATION PROCESS

The constitutional convention in 1972 adopted what became Art. IX, § 3 of the 1972 Mont. Const., in part as follows:

> All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized or confirmed.
>
> . . .
>
> (4) The legislature shall provide for the administration, control, and regulation of water rights, and shall establish a system of centralized records, in addition to the present system of local records.

In response to this constitutional mandate, the legislature in 1973 substantially overhauled our statutes relating to water rights. The legislature imposed upon the DNRC, under former § 89-870, R.C.M. (1947), the duty to determine existing rights. The statute said:

> (1) The department shall establish a centralized record system of all existing rights, and the department, shall, as soon as practicable, begin proceedings under this act to determine existing rights. To accomplish this, the department shall gather data essential to the proper understanding and determination of those existing rights.
>
> (2) The department may select and specify areas or sources where a need for determination of existing rights is most urgent, and first begin proceedings under this act to determine the existing rights in those areas or sources.

Section 6, Ch. 452, Laws of Montana (1953).

The power of the DNRC to gather data under the 1973 enactment included the use of court decrees, declarations of

existing rights, groundwater records, notice of appropriations, findings of water resource surveys earlier conducted, and "the findings of inspections, surveys, reconnaissance, and investigations of the area or source involved as the department makes." Section 89-871, R.C.M. (1947).

The District Courts were to be utilized by the DNRC for the determination of existing rights, commenced by the DNRC filing in the District Court, a request for such a determination. The request on petition was to be filed within a reasonable time after the DNRC had gathered all necessary data as aforesaid (§ 89-874, R.C.M. (1947)) and that section also provided that if the District Court determined that additional data was necessary prior to a preliminary decree in order to determine the extent of an existing right, the District Court could direct the department or the person claiming the right to obtain the necessary data. (§ 89-874(3), R.C.M. (1947).)

Thereafter, when presumably the District Court had before it all of the necessary data, the District Court would issue a preliminary decree with respect to the area or source, which would eventually ripen into a final decree.

The determination under the 1973 laws proceeded slowly. Albert Stone, Professor of Water Law at the University of Montana, observed:

> . . . by 1979, 6 years after its beginning, the adjudication of the Powder River Basin was in its initial stages. One of the difficulties with the 1973 adjudication provisions was that representatives for the Department of Natural Resources were required to go into the field, walk the old ditches and laterals, and physically discover all of the unrecorded, unasserted, and unknown water rights. So the legislature became restless over the evident prospect of a century or more which would be needed to adjudicate the water

- 9 -

rights for the entire state. It sought procedures needed for the improvement and acceleration of the process.

Stone, Montana Water Law for the 1980's, Univ. of Montana (1981).

In 1979, the legislature revamped its process for adjudication of water rights. It repealed former sections 89-870,-879, R.C.M. (1947), including the statutes granting the powers above described to the DNRC.

In 1979, the legislature established a system of water courts, providing for water divisions, water judges, water masters, disqualification of judges and masters, and jurisdiction. Title 3, Ch. 7, parts 1, 2, 3, and 4, MCA. Jurisdiction for the determination of existing water rights was placed exclusively in the water courts, sitting in the respective water divisions. Section 3-7-501, MCA.

The adjudication of water rights under the 1979 enactment was begun by the filing of a petition in this Court by the Attorney General for the State of Montana requesting the Montana Supreme Court to require all persons claiming a water right to file a claim of that right in accordance with the new procedures. In June, 1979, this Court issued a water rights order whereby every person or entity claiming a water right, was ordered to file a statement of that claim with the DNRC. The statement of claim was to include all of the data required to identify the owners of, the extent of, the legal description of, the purpose of, and the times of use of existing water rights. Section 87-2-224, MCA. A claim of an existing right filed in accordance with the new act was to "constitute prima facie proof of its content" until the issuance of a final decree. Section 85-2-227, MCA.

The function of the department in rendering assistance to the water judges was set forth in § 85-2-243, MCA. That section follows:

> The department subject to the direction of the water judge, shall, without cost to the judicial districts wholly or partly within his water division:
>
> (1) provide such information and assistance as may be required by the water judge to adjudicate claims of existing rights;
>
> (2) establish information and assistance programs to aid claimants in the filing of claims for existing rights required by 85-2-221;
>
> (3) conduct field investigations of claims that the water judge in consultation with the department determines warrant investigation; and
>
> (4) provide the water judge with all information in its possession bearing upon existing rights, including all declarations filed with and all information gathered by the department with respect to existing rights in the Powder River Basin.

Any further duties of the department with respect to the adjudication of existing claims may be found in § 85-2-112, MCA. They include the duty to enforce and administer the adjudication chapter "subject to the powers and duties of the Supreme Court under 3-7-204, MCA;" to prescribe procedures, forms and requirements for claims of existing rights and prescribing information therein; to keep a centralized record system in Helena of such claims of existing rights; to cooperate with and to assist federal, state and local agencies in adjudication matters; and upon request, to assist in advising persons relating to the filing of claims of existing rights.

We have not touched upon the history of claimants of reserved rights, including United States, the reserved or

claimed rights of state agencies, or the claimed or reserved Indian rights. Some portion of the history of those entities in the matter of adjudication of existing water rights will appear later in this Opinion.

STATUTORY AUTHORITY IN THE WATER COURTS AND IN DNRC

Two things stand out clearly from the legislative enactments that occurred in 1979: (1) the water judge in each division has jurisdiction over all matters concerning the determination of existing water rights within his division (§ 3-7-501(3), MCA); (2) the role of the DNRC in the adjudication process, always subject to the direction of the water judge, is to provide such information and assistance as may be required by the water judge, to establish information and assistance programs to aid claimants in the filing of claims, and to conduct field investigations in claims that the water judge, in consultation with the department warrant investigation. Section 85-2-243, MCA.

The further duty of the DNRC in § 85-2-243, MCA, to provide the water judge with all information in its possession relating to existing water rights in the Powder River Basin derived from the fact that the department had prior to 1979 commenced water right determinations in that basin and the holders of water rights in that basis had been exempt from filing further claims under the new adjudication process. Section 85-2-222, MCA.

We note that in § 89-874, R.C.M. (1947), now repealed, it was formerly provided prior to 1979 that if the District Court in adjudicating a water right determined that additional data was necessary prior to a preliminary decree, the District Court could direct the department or the person claiming the right to obtain the necessary data. That provision of the former law was carried forward and is

included in present § 85-2-243, MCA. However, there is no current statutory language which continues the DNRC's independent investigation authority in adjudication matters which had been stated in former §§ 89-870 and 89-871, R.C.M. (1947), now also repealed.

However, DNRC contends in this appeal that it is an "agency" which must adopt "rules" which prescribe the procedures and practice requirements to be used by it in implementing Title 85, Ch. 2, Part 2, MCA. It is apparently backed up in this contention by a letter from the committee chairman of the legislature's Administrative Code Committee which states that DNRC's proposed rules are substantive rules within the meaning of §§ 2-4-102(10), 2-4-102(11), MCA. (The Administrative Code Committee has not participated in these proceedings, though empowered to do so (§ 2-4-402(d), MCA)).

We must, therefore, determine, in the absence of express rulemaking authority as we noted above, whether DNRC may find such authority within MAPA itself. The pertinent statutes are these:

> 2-4-102. Definitions. For purposes of this chapter, the following definitions apply:
>
> . . .
>
> (2)(a) "Agency" means any agency, as defined in 2-3-102, of the state government . . .
>
> (10) "Rule" means each agency, regulation, standard of statement of general applicability, it implements, prescribes law or policy or describes the organization, procedure or practice requirements of an agency . . .
>
> (11) "Substantive" rules are either:
>
> (a) legislative rules, which if adopted in accordance with this chapter and under expressly delegated authority to promulgate rules to

implement a statute have the force of law and when not so adopted are invalid; or

(b) adjective or interpretative rules, which may be adopted in accordance with this chapter and under express or implied authority to codify an interpretation of a statute. Such interpretation lacks the force of law.

The "agency" definition referred to in § 2-3-102(2)(a), MCA, is the following:

2-3-102. Definitions. As used in this part, the following definitions apply:

(1) "Agency" means any board, bureau, commission, department, authority or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts . . . (Emphasis supplied.)

For the DNRC to have rulemaking authority, its first hurdle, over which it cannot jump, is expressly delegated authority from the legislature to make such rules. As an "agency" it must be authorized by law to make rules. If its "substantive rules" are intended to be legislative, it must have expressly delegated authority to promulgate rules. If its substantive rules are intended to be adjective or interpretative, it must have either expressed or implied authority to codify an interpretation of a statute. Absent any legislative authority, the DNRC has no authority with respect to rulemaking:

2-4-301, MCA. Authority to adopt not conferred. Except as provided in Part II [not applicable] nothing in this chapter confers authority upon or augments the authority of any state agency to adopt, administer, or enforce any rule.

If there is any doubt that the DNRC has no such power to adopt the rules proposed in this case, that doubt must be erased in consideration of § 3-7-103, MCA:

**3-7-103. Promulgation of rules and prescription of forms.** As soon as practicable, the Montana Supreme Court may promulgate special rules of practice and procedure and shall prescribe forms for use in connection with this chapter and chapter 85, chapter 2, parts 2 and 7, in consultation with the water judge and the Department of Natural Resources and Conservation.

Thus clearly is spelled out by the legislature where the power of rulemaking lies with respect to the adjudication of water rights. That power resides in this Court. DNRC has no more than a consultatory function.

Under our statutes only the BNRC has rulemaking authority and the DNRC itself has no such authority. Section 85-2-113, MCA. We are aware that § 85-2-121 provides that the Montana Administrative Procedure Act governs administrative proceedings conducted under Parts 1 through 4 of Title 85, MCA. Since 1979, however, the adjudication of existing claims for water rights has been a judicial proceeding, and not an administrative proceedings. Section 85-2-121, therefore does not apply in this instance. We are fortified in this by the provisions of § 85-2-112, MCA, prescribing the department duties, which states:

85-2-112. Department Duties. The department shall:

(1) enforce and administer this chapter and rules adopted by the board under 85-2-113, subject to the powers and duties of the Supreme Court under 3-7-204 . . .

The legislative intent is clearly to be deduced from the statutes foregoing. The power of rulemaking with respect to the judicial proceedings pending before the water court is reserved to the Supreme Court with the department acting in a consultative capacity. Neither the board nor the Department of Natural Resources has any rulemaking authority with

respect to procedures in the adjudication of water claims before the water courts.

Having said the foregoing, we hasten to add that nothing in this determination shall be taken to demean or underestimate the crucial role to be played by DNRC in the adjudication of water rights claims. The technical expertise, assistance and information of the DNRC, which all sides recognize, is indispensable for the success of the adjudication process. A lack of departmental cooperation in the furnishing of such technical expertise, assistance or information could bring the judicial adjudication of water rights to a grinding halt. It was to insure ongoing, uninterrupted progress towards ultimate quantification of water rights that the legislature provided in § 85-2-243, MCA, that the department should be subject to the directions of the water judges in matters affecting adjudication.

When, in the very near future, this Court bends to the task of formulating and adopting rules, it will do so after consultation with the water courts and with the Department of Natural Resources and Conservation. In those rules, this Court will adhere to the legislative directions found in § 85-2-243. There will be room within those rules for the integrity of DNRC in supplying the information and expertise requested by the water courts. When such rules are promulgated by us, there will be an opportunity for public comment before such rules become finally effective.

<u>85-2-243 AND DUE PROCESS</u>

We have no underlying factual situation in this case, in which an aggrieved water rights claimant has come to this Court contending that he/she has been deprived of due process because of the role played by the DNRC under § 85-2-243, MCA.

DNRC, however, points to an "underlying concern" that if it is not given the power to adopt rules under MAPA, the

performance of its duties under § 85-2-243, may lead eventually to a determination in this Court or some federal court that the procedures utilized deprived a person or entity of due process.

DNRC ties its "underlying concern" to an unresolved issue of due process in State ex rel. Greely v. Confederated Salish & Kootenai Tribes (Mont. 1985), 712 P.2d 754. DNRC further points to United States v. Superior Court for Maricopa County (hereafter Maricopa), San Carlos Apache Tribe v. Superior Court for Maricopa (1985), 144 Ariz. 265, 697 P.2d 658, as a benchmark level which our adjudication process must attain to survive a due process frontal attack.

In State ex rel. Greely v. Confederated Salish & Kootenai Tribes, the Assiniboine and Sioux Tribes on the Fort Peck Reservation, the Crow Indian Tribe Indians of the Crow Reservation and the Northern Cheyenne Tribe of the Northern Cheyenne Reservation and the Confederated Salish and Kootenai Tribes on the Flathead Reservation all raised due process issues involving the DNRC's various roles in the adjudication process. We determined that such due process claims were not ripe for review, saying:

> Several tribes have claimed that the involvement of the Department of Natural Resources with the water court prior to issuance of preliminary decrees may violate the requirements of due process. Section 85-2-243, MCA, authorizes the department to assist the water court, including collecting information and conducting field investigations of questionable claims. While we recognize that the act places no limits on the matter in which the water court utilizes the information furnished by the department, we will not presume any improper application of the act on the part of the water court. Actual violations of procedural due process and other issues regarding the act as applied are reviewable on appeal after a factual record is established.

712 P.2d at 765.

DNRC is a holder of water rights, representing the State. As such it has water rights which are subject to the claims registration requirements of the Montana Water Use Act. Thus, DNRC is a claimant in the adjudication process. As a claimant, it may make objections to preliminary decrees in the defense of its water rights. Moreover, the DNRC may object to any preliminary decree, independent of its status as a water rights claimant. Section 85-2-233, MCA. The requirement that the DNRC assume these roles, and at the same time be obliged to supply technical information and expertise to the water courts gives rise to the potential due process objections by the Tribes. DNRC points to the decision in Maricopa in this regard.

In Maricopa County, the Arizona Department of Water Resources was assigned functions of determining the scope of the adjudication, the development of claim forms, and the service of process on potential claimants. It also provided a list of potential water masters to the State court and provided technical assistance to the court or master. But in Arizona, a separate agency was assigned the role of claimant to water rights on behalf of the state, and the Attorney General of that state represents the state with respect to claims asserted on the state's behalf. The DNRC fears that it may be considered to be "institutionally biased," because it is both a claimant to water rights, an objector to preliminary decrees, and yet the furnisher of technical expertise and information to the water court. In Maricopa, the adjudication scheme of Arizona was upheld because the adjudicatory functions of its department was separated from the ownership functions of the state which were placed in another department. 697 P.2d 672-674.

- 18 -

There is, of course, a potential of due process problems in Montana's adjudication plan, but absent a factual record, we may not presume that due process violations have occurred. The Indian tribes, so far, by legislative grant, § 85-2-217, MCA, have not been involved in the adjudication proceedings. The due process potential problem is greatly ameliorated by the notice of preliminary decree provisions in § 85-2-232, and the provisions for hearing in 85-2-233. Appeals are preserved in § 85-2-235, MCA.

Our water courts are aware, we trust, that the United States Supreme Court reserved the right to review state court adjudications of federal reserve water rights in San Carlos Apache (1983), 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837, and said it would give "particularized and exacting scrutiny" commensurate with the powerful federal interests in safeguarding those [Indian] rights from state encroachment. The alternative presented to us by the DNRC in raising its underlying concern about due process is to eliminate completely from § 85-2-243 any requirement that the water judge control the adjudication by directing the DNRC to provide information and assistance and to investigate claims. Such action would make the water adjudication procedure almost unworkable. In the meantime, as we stated in Confederated Salish and Kootenai, the issue is not yet ripe for review.

SECTION 85-2-243 SEPARATION OF POWERS

Under this heading, DNRC contends that the water court's orders of July 23, 1986 and August 8, 1986 demonstrate its plan to exert total control over the day by day operations of DNRC. Such, DNRC, contends is judicial control over an executive agency and as such an improper incursion by the judiciary on executive powers.

As with DNRC's due process claims, we do not have a factual record that would establish an improper exercise by the water courts of executive powers in the guise of judicial action. We do have, however, the stipulation entered into between the DNRC, the water courts and other parties in cause nos. 85-345, 85-468, and 85-493 pending in this Court. In that stipulation, in paragraph 26, page 10, it is stated:

> Pursuant to section 85-2-243, MCA, the water court, after consultation with DNRC, shall issue orders establishing time frames for the completion of verification by DNRC and the submission of verification information to the court. The water court order shall also establish the specific elements of each type of water right claimed to be verified by DNRC. The verification by DNRC shall be limited to factual analysis and the identification of issues. The water court shall refrain from participating in the verification of claims by DNRC, except the water court, upon proper application and for good cause shown, may enjoin DNRC from acting beyond its jurisdiction in the verification process.

The language of the foregoing stipulation, acceded to by the chief judge of the water court, belies any intention of the water court to override or control the day to day operations of the DNRC. The only effect of the orders of July 23 and August 8, 1986, issued by the water court was to require the DNRC to desist from making rules under MAPA, a procedure which we have already shown to be beyond the power of the DNRC in this case.

Again in the absence of a factual record, we find no intrusion by the water courts in this case upon the executive duties of the DNRC.

## CONCLUSION

The orders issued by the water court directed the DNRC, dated July 23, 1986 and August 8, 1986, are hereby affirmed.

This Court sees the need for the adoption of rules relating to the verification of water claims in the adjudication process as necessary, and therefore will exercise its discretionary power under § 3-7-103, MCA, to promulgate special rules of practice and procedure therefor. This Court therefore orders that the chief water judge of the water courts, and the director of the DNRC appoint staff members who shall meet within fifteen days of the date of this Opinion for the purpose of drafting proposed rules for adoption by this Court. Such proposed rules shall be filed in this Court in this cause on or before thirty days from the date of this Opinion. If the parties are unable to agree on any part of such rules, each party shall submit his or its separate version of those rules within thirty days of this Opinion. Thereafter, this Court will set a date for consultation with the chief water judge and the Department of Natural Resources and Conservation pursuant to § 3-7-103, MCA, to the eventual adoption of proper rules. Jurisdiction in this Court is reserved until the further order of this Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 21 -